### Roberta P. Zimmerman v. Thomas Murphy.

#### Gen. No. 12,920.

1. INNKEEPER—*when liable to guest for money deposited. Held*, under the facts of this case, that the innkeeper was liable to a guest who had deposited money for safe-keeping by giving the same to an employe, who, under the evidence, was an agent of such innkeeper.

Action commenced before justice of the peace. Appeal from the Circuit Court of Cook county; the Hon. PAUL MCWILLIAMS, Judge, presiding. Heard in this court at the March term, 1906. Affirmed. Opinion filed January 7, 1907.

MANCHA BRUGGEMEYER, for appellant.

HECKMAN, ELSDON & SHAW and WILL C. MOODY, for appellee; JAMES G. ELSDON, of counsel.

Mr. PRESIDING JUSTICE BROWN delivered the opinion of the court.

This is an appeal from a judgment of the Circuit Court of Cook county in favor of appellee, who was plaintiff below, against appellant, who was defendant below, for $175.53. The judgment was rendered in the Circuit Court on the verdict of a jury. A judgment for $170 had previously been obtained by the plaintiff before a justice of the peace, and the defendant had appealed from it to the Circuit Court.

The facts as they appeared on trial were these: The plaintiff, Thomas Murphy, who was a cook in a hotel at Lafayette, Indiana, came to Chicago, April 11,

1905, and went to the Somerset Hotel, kept by the defendant Roberta P. Zimmerman, at the corner of Twelfth street and Wabash avenue. He arrived there in the early evening at about six or seven o'clock. He found in the office a Mr. Taylor, who was the night clerk in the employ of the defendant. He inquired the price for rooms, was told, and took a room, paying for three nights in advance. He went to bed between eight and nine o'clock. A colored boy took him up on the elevator and showed him the room. In the room he found a sign concerning the deposit of money and other valuables at the office for safe keeping. In the morning he left his room, which was on the second or third floor, between eight and nine o'clock. He went to the elevator and rang the bell and it came up for him in the charge of a man named Lunt. When they reached the office floor they both left the elevator. Plaintiff gave Lunt his room key, who hung it up with the other keys. The plaintiff then sat down in the office, and Lunt went behind the office desk. There was nobody else in the office. Men came down the stairway and gave Lunt their room keys, and the mail carrier came in and gave Lunt the mail, which he put away. In about half an hour the plaintiff went over to Lunt, who was writing behind the desk where plaintiff had registered the night before, and told him that he had some money he wanted to give to the office for safe keeping. Lunt told plaintiff to give it to him, and on receiving it "put it away somewhere"—"behind the desk." He then gave the plaintiff this receipt:

"Received of T. Murphy money for safe keeping. Amount $170.

S. T. LUNT, Clerk."

The plaintiff then sat down again, read his receipt and put it away, and read the newspaper for awhile. After that he went to his breakfast and left the hotel. He returned an hour or two later and found Lunt still behind the desk or counter, standing up there. There

was then a man sitting in the office reading a paper, apparently a guest, but no one else in the room. There was an iron safe in the office. The plaintiff did not see Lunt again while at the hotel. He went out again on the 12th and returned at night. At that time he saw Mr. Taylor, the night clerk, again at the desk. He went to bed on that night at about eight o'clock. Thursday and Friday, the 13th and 14th of April, he was in and out of the hotel during the day, and staid there Thursday night, but did not see Lunt during those days, nor did he see Mrs. Zimmerman, the defendant, there. She was away ill, as he was told. Friday morning Mrs. Zimmerman's son, Walter Zimmerman, brought down the plaintiff in the elevator from his room to the office, as Lunt had done on Wednesday. When they arrived at the office floor Zimmerman took plaintiff's room key, as Lunt had done before, and hung it up with the others.

The plaintiff having obtained work, and being about to leave the hotel, on Friday afternoon (the 14th) went to the desk of the office and presented the receipt which he held and demanded his money. Mr. Taylor, the night clerk, and Walter Zimmerman were both behind the desk when this demand was made. They "talked it over." The conversation which then took place was ruled out by the court below on the objection of the defendant. Indeed the conversation which took place between the plaintiff and Lunt when the plaintiff handed over the money was stricken out on a like objection and the jury told not to regard it—a ruling more favorable to the defendant than was justifiable in our opinion. Whatever the conversation was between Taylor, Zimmerman and the plaintiff, it appears that it did not result in the plaintiff's getting his money back. Nor did he ever do so.

In addition to the testimony of the plaintiff, which showed the foregoing facts, the plaintiff introduced the testimony of the defendant herself. She testi-

fied, on direct examination, that she was the proprietor of the Hotel Somerset and the hotel business conducted therein; that she had a man by the name of S. T. Lunt working for her in April, 1905; that she had a son named Walter Zimmerman then working for her at the hotel, and that at that time Mr. Taylor was night clerk there. On cross-examination by her own counsel she said that Lunt's duties were to run the elevator and make himself generally useful—put the coal on the fire once in a while and do anything he was called on to do around the place; that Mr. Taylor as night clerk came on duty at six o'clock in the evening and represented her in the office until seven in the morning; that her son, Walter Zimmerman, was supposed to represent her in the office if she was not there during the day.

On re-direct examination she said that her son had charge in the office after the night clerk left in the morning; that when her son was not there she herself was supposed to be there, and that if neither of them was there, the elevator boy, Lunt, would either call her son or herself. The re-direct examination then concluded with these questions and answers:

"Q. Supposing you and your son were away, what would he do? A. I presume he would have to do the best he could do then.

"Q. In other words, when there was no one else there to do things, this man Lunt did whatever was necessary in and about the work of the office? A. Yes, if anything was to be done."

After this testimony and under instructions, which by the assignments of error are not complained of by the defendant (except as to allowance of interest) and are not even in that respect criticised in argument, and which are certainly as favorable statements of the law for the defendant as could be reasonably asked by her, the jury found for the plaintiff, assessing damages at the amount of the deposit with interest from the time of demand.

We do not see how any other verdict on the evidence would have been justifiable. The court properly overruled a motion for a new trial.

It is argued here that the receipt should not have been allowed in evidence over defendant's objection, because it was signed by Lunt as clerk, and there was no evidence that he was clerk, and that the verdict was against the weight of the evidence that was introduced. We do not think an extended discussion on these points necessary. The statute provides that every hotel keeper shall have an iron safe in good order in his hotel, and that he shall keep notices posted conspicuously that his guests must leave money and valuables "with the landlord, his agent or clerk for safe keeping, that he may make safe deposit of the same in the place provided for that purpose."

It then provides that if money or other valuable property is not delivered to the landlord, his agent or clerk for deposit, the landlord shall not be liable for the loss of it in the hotel, unless such loss shall occur by the hand or negligence of the landlord or of a clerk or servant employed by him in the hotel.

This is an abridgement of the landlord's common law liability on certain conditions. One of these conditions is that he maintains a safe to keep valuables, and an agent or clerk to receive it from such guest.

The evidence is plain that at the time Lunt took the money he was authorized and held out as such agent or clerk. There was, in our opinion, competent evidence excluded on the defendant's objection, but no incompetent evidence admitted over it.

The judgment is affirmed.

*Affirmed.*